MAZURKIEWICZ, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. PAWINSKI, Defendant and Appellant: PALMERSCHEIM and another, Defendants.

*September 9—October 4, 1966.*

---

For the appellant there was a brief by *Prosser, Zimmermann & Wiedabach* of Milwaukee, and oral argument by *John F. Zimmermann.*

For the respondents there was a brief by *Krawczyk & Duginski* of Milwaukee, and oral argument by *Michael J. Duginski.*

HANLEY, J.   Appellant contends the complaint does not allege sufficient facts to state a cause of action upon the attractive-nuisance theory which permits a child of tender years to recovery under certain circumstances whether or not she is a trespasser. The attractive-nuisance doctrine is grounded in negligence.[1]   It was applied in *Angelier v. Red Star Yeast & Products Co.* [2] decided in Wisconsin in 1934.

In *Schilz v. Walter Kassuba, Inc.* (1965), 27 Wis. (2d) 390, 393, 134 N. W. (2d) 453, the court reiterated the elements of an attractive nuisance cause of action as follows:

"(1)  . . . that the former maintained, or allowed to exist, upon his land, an artificial condition which was inherently dangerous to children being upon his premises . . . .

"(2)  . . . that he knew or should have known that children trespassed or were likely to trespass upon his premises . . . .

"(3)  . . . that he realized or should have realized that the structure erected or the artificial condition main-

---

[1] *Smith v. Jefferson* (1959), 8 Wis. (2d) 378, 99 N. W. (2d) 119.
[2] *Angelier v. Red Star Yeast & Products Co.* (1934), 215 Wis. 47, 254 N. W. 351.

tained by him was inherently dangerous to children and involved an unreasonable risk of serious bodily injury or death to them . . . .

"(4) . . . that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or in playing in close proximity to the inherently ·dangerous condition . . . .

"(5) . . . that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained . . . ."

The complaint does not allege the elements (4) and (5) above set forth requiring an allegation that the plaintiff minor, because of her youth or tender age did not discover the condition or realize the result involved and an allegation that safeguards could reasonably have been provided to obviate the inherent danger without materially interfering with the purpose of the condition created. Therefore the complaint does not state a cause of action based upon the theory of attractive nuisance.

The issue appears to be whether the water ski jump located in an accessible area can be deemed inherently dangerous to children even if alleged to be so. The complaint merely describes the structure as being elevated at one end and sloping to the water level at the opposite side. There are no allegations of hidden dangers, moving parts, or defective parts. We infer from the complaint that children used the water ski jump for sliding and jumping into the water. The result involved in doing so was simple and obvious, and we have said the term "inherently dangerous" which we use in this context means the same as "highly dangerous" or *"per se* dangerous" used elsewhere.[3]

We have pointed out that: "The question whether a condition is· inherently dangerous to children involves

---

[3] *Massino v. Smaglick* (1958), 3 Wis. (2d) 607, 612, 89 N. W. (2d) 223.

the question whether the danger is such as would be obvious to children." [4]

In a comment to the rule as set forth in the Restatement it is said:

"The duty . . . does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them." [5]

We have stated:

"It appears generally to be the rule that a child is bound to appreciate a simple and obvious danger of falling from an object or structure, but is not bound to appreciate a danger presented or exaggerated by a defect in the structure or other peculiar circumstance, which is hidden from the child or which a child would fail to appreciate because of his immaturity." [6]

A water ski jump resting on the ground in a public park was held not to be inherently dangerous to children:

"Here we have an object that was constructed appropriately to serve its function. To equip it with 'guards' or 'rails to keep children from sliding off the sides,' . . . would seriously impair if not completely destroy its usefulness as a water ski jump. The only risk attendant upon its use as a slide when thus resting upon the ground was perfectly obvious, the hazard of falling off the upper

[4] *Nechodomu v. Lindstrom* (1956), 273 Wis. 313, 326, 77 N. W. (2d) 707, 78 N. W. (2d) 417.

[5] Restatement, 2 Torts, p. 922, sec. 339, comment *b*.

[6] *Schilz v. Walter Kassuba, Inc., supra,* page 396. See also: *Chase v. Luce* (1953), 239 Minn. 364, 58 N. W. (2d) 565; *Helguera v. Cirone* (1960), 178 Cal. App. (2d) 232, 3 Cal. Rptr. 64; *Woods v. City and County of San Francisco* (1957), 148 Cal. App. (2d) 958, 307 Pac. (2d) 698; *Atlantic Peninsular Holding Co. v. Oenbrink* (1938), 133 Fla. 325, 182 So. 812; *Perrin v. Rainwater* (1938), 186 S. C. 181, 195 S. E. 283; *Greene v. DiFazio* (1961), 148 Conn. 419, 171 Atl. (2d) 411; *Krause v. Almor Homes, Inc.* (1962), 149 Conn. 614, 183 Atl. (2d) 273; *Diglio v. Jersey Central Power & Light Co.* (1956), 39 N. J. Super. 140, 120 Atl. (2d) 650, and *Stevens v. Ohio Fuel Gas Co.* (1960), 92 Ohio L. Abs. 1, 193 N. E. (2d) 317.

end or over either side. No sign warning of this hazard would be necessary for any adult nor for most children, even children of tender years. . . . There was involved no hidden risk, no element of entrapment, no moving machinery to impose upon defendant a duty toward plaintiff to install guard rails, post warning signs or take other precautions for plaintiff's protection should he choose to use this ski jump as a slide." [7]

It appears the minor plaintiff needed no such warning. She had previously to the fall requested the defendant, Jeffrey Palmerscheim, to remove his boat from its position tied to the structure.

Appellant further contends the complaint does not state a cause of action for nuisance because it does not allege facts that the alleged nuisance had a causal connection with the accident.

The complaint merely alleges on this point that the water ski jump was erected and maintained without authority to do so from the Wisconsin public service commission and that the commission refused to grant approval to maintain said structure on Big Muskego lake. The complaint does not allege that the structure was a public nuisance. However, respondent contends and the trial court agreed that under the following statutory provisions the structure was a public nuisance.

Sec. 30.12, Stats., provides as follows:

"30.12 **Structures and deposits in navigable waters prohibited; exceptions; penalty.** (1) GENERAL PROHIBITION. Unless a permit has been granted by the public service commission pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

" (a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

" (b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

---

[7] *Severance v. Rose* (1957), 151 Cal. App. (2d) 500, 502, 311 Pac. (2d) 866.

"(2) PERMITS TO PLACE STRUCTURES OR DEPOSITS IN NAVIGABLE WATERS. (a) The public service commission may, upon application and after notice and hearing, grant to any riparian owner a permit to build or maintain for his own use a structure otherwise prohibited by statute, provided such structure does not materially obstruct navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest.

"(b) A riparian owner may place a layer of sand or other similar material on the bed of a lake adjacent to his property for the purpose of improving recreational use upon obtaining approval as stated in this paragraph. An application for approval to put sand or other similar material on the bed of a lake for such purpose shall be made to the public service commission. Thereupon the commission shall notify the conservation director of such application, and the latter shall cause an inspection to be made of such proposal and of the location involved and shall report in writing to the public service commission whether the proposal will materially impair navigation or be inconsistent with the public interest. Thereafter the public service commission may disapprove such application in the event it finds the proposed work will materially impair navigation or be detrimental to the public interest. If the commission does not disapprove within 10 days after receipt of the report of the conservation director, approval is deemed granted. The applicant shall be notified by mail as to the manner of disposition of his application.

"(3) PENALTY. Any person violating this section or any term or condition of a permit issued pursuant thereto shall be fined not more than $1,000 or imprisoned not more than 6 months or both."

Sec. 30.15, Stats., provides as follows:

"30.15 **Penalty for unlawful obstruction of navigable waters.** (1) OBSTRUCTIONS PENALIZED. Any person who does any of the following shall forfeit not more than $50 for each offense:

"(a) Unlawfully obstructs any navigable waters and thereby impairs the free navigation thereof.

"(b) Unlawfully places in navigable waters or in any tributary thereof any substance that may float into and obstruct any such waters or impede their free navigation.

"(c) Constructs or maintains in navigable waters, or aids in the construction or maintenance therein, of any boom not authorized by law.

"(d) Constructs or places any structure or deposits any material in navigable waters in violation of s. 30.12 or 30.13.

"(2) EXCEPTIONS. Subsection (1) does not apply to the floating or movement of logs or timber in navigable waters, or the necessay use of temporary booms in the course of such floating or movement or the cutting of weeds in such waters with the consent of the conservation commission.

"(3) EACH DAY A SEPARATE VIOLATION. Each day during which an obstruction exists in violation of sub. (1) is a separate offense.

"(4) OBSTRUCTIONS ARE PUBLIC NUISANCES. Every obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter and every violation of s. 30.12 or 30.13 is declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

The intent of the above statutes is to prevent an unlawful obstruction of navigable waters. Therefore, it is clear that if under secs. 30.12 and 30.15, Stats., the ski jump was a nuisance, it was so only because it obstructed navigation and not because it was elevated at one end or because children played on it.

"In order to recover damages for an injury sustained by reason of the maintenance of a nuisance, the maintenance of the nuisance must be the natural and proximate cause of the injury . . . ." [8]

In this case, the complaint does not allege any facts to show a causal connection between the water ski jump's obstruction of a navigable lake and the minor plaintiff's fall. The failure of defendant, Edward C. Pawinski, to have permission from the public service commission to maintain his water ski jump on the lake is similar to the

---

[8] 66 C. J. S., Nuisances, p. 743, sec. 8.

failure of an operator of a motor vehicle to have a driver's license at the time of an accident. In both cases lack of permission or license has no causal connection with the injuries sustained.

A causal connection between the plaintiff minor's injury and the defendant Pawinski's violation of the statutes appears to us to be absent. A complaint must allege facts showing that the alleged wrong proximately caused plaintiff's injury.[9] The trial court in its decision held that Restatement, 2 Torts (2d), p. 197, sec. 339, was inapplicable to the present case because in the words of the court: "We are not faced with a trespass upon land, but rather with an accident which occurred upon a structure in a public way."

The court cited from an annotation in 36 A. L. R. 34, 105:

" 'In the case of injuries in a public street, they have held that one who maintains in a street an unguarded object or condition likely to attract children to meddle or play therewith, with the probable result of causing injuries to themselves or others lawfully using the street, is guilty of actionable negligence if he knows, or is chargeable with knowledge, of the attractiveness of the object or condition and the consequent probability of such meddling and resulting injury. . . .' "

The above annotation in 36 A. L. R. 34, 105, was written in 1925 prior to the holding of the court in *Angelier v. Red Star Yeast & Products Co., supra.*[10]

In the *Angelier* case the court laid down the elements of a cause of action based upon the attractive-nuisance theory. The court pointed out that it no longer was going to deem material the legal status of a child or the place where the accident happened in an attractive-nui-

[9] *Reque v. Milwaukee & Suburban Transport Corp.* (1959), 7 Wis. (2d) 111, 95 N. W. (2d) 752, 97 N. W. (2d) 182.

[10] *Angelier v. Red Star Yeast & Products Co., supra,* footnote 2.

sance case. The fact that the accident happened on a public lake rather than private land does not make inapplicable sec. 339 of Restatement, 2 Torts (2d), that the danger of falling from a height should have been fully understood by a child. The court applied the elements of the attractive-nuisance doctrine set forth by *Angelier* in an action for injury to a young child from warning flares in a public street.[11] Counsel for the respondent now contends that the complaint states facts sufficient to constitute a cause of action based on the theory of negligence. The doctrine of attractive nuisance is not a separate cause of action but is merely another form of negligence. It allows a child who can meet the requisite elements that constitute a cause of action under the attractive-nuisance theory a possibility of redress for his injuries whereas he would have been unsuccessful if just attempting to allege plain negligence. If under the facts given in the present case no cause of action existed under the attractive-nuisance theory, then there is no cause of action in plain negligence. This view seems to be substantiated by a quote from *Nechodomu v. Lindstrom, supra,*[12] at page 319, which reads:

" 'It should be clear by now that the phrase "attractive nuisance" indicates no special departure or exception from the ordinary run of negligence cases. It is but a convenient phrase to designate one sort of case within the ordinary rule that one is liable for injury resulting to another from failure to exercise, for the protection of the injured child, the degree of care commensurate with and therefore demanded by the circumstances. The greater the hazard the greater the care required.' "

We conclude that an allegation that the structure (a water ski jump) was a dangerous instrumentality is a conclusion not admitted by demurrer and that as a matter

---

[11] *Smith v. Jefferson, supra,* footnote 1.

[12] *Nechodomu v. Lindstrom, supra,* footnote 4.

of law plaintiff must be held to knowledge and appreciation of the obvious result of falling from the ski jump.

*By the Court.*—Order reversed, with directions to sustain the demurrer.