McWILLIAMS, Respondent, v. GUZINSKI, and others, Appellants.

*No. 77 (1974). Argued September 29, 1975.—*
*Decided January 20, 1976.*
(Also reported in 237 N. W. 2d 437.)

58

For the appellants there was a brief by *James R. Gass* and *Kasdorf, Henderson, Dall, Lewis & Swietlik,* all of Milwaukee, and oral argument by *Russell M. Ware.*

For the respondent there was a brief by *Robert E. Sutton, Thomas W. St. John* and *Samson, Friebert, Sutton, Finerty & Burns,* all of Milwaukee, and oral argument by *Thomas W. St. John.*

DAY, J.   The order appealed from overrules the defendants' demurrer and the question here is whether the complaint states a cause of action in negligence under the "attractive nuisance" doctrine.[1]

The action was brought by the mother of a deceased child for damages sustained by her as a result of the drowning of her four-year-old son, Joseph, in a backyard swimming pool owned by the defendants, Mr. and Mrs. Thomas Guzinski. It is alleged that the pool is surrounded by a fence constructed in a "basket weave" manner, presenting a "natural stepladder" at each support post. The sole allegation in the complaint concerning the fence's gates is "that on July 11, 1972 there were two gates in the fence and that on information and belief on July 11, 1972 and at all times material hereto neither of those gates were locked."

For a substantial period of time prior to the drowning, children of "tender years" had allegedly been accustomed to playing in the swimming pool, and the defendants knew of such activity. The deceased, Joseph Ajack, resided in the vicinity of the Guzinski home and allegedly waded, swam, and played in the swimming pool fre-

---

[1] This case arose prior to our holding in *Antoniewicz v. Reszczynski* (1975), 70 Wis. 2d 836, 236 N. W. 2d 1, and we make no comment here concerning the effect of that case, if any, on attractive nuisance doctrine.

quently with other children, and with the defendants' knowledge.

At about 4:30 p.m. on July 11, 1972, Joseph was playing and wading in and about the swimming pool, and was allegedly unaware that without proper supervision there are inherent dangers involved in wading and playing in a swimming pool. Joseph got into the swimming pool area, fell into the pool, and drowned. The complaint alleges that Joseph was "unaware of the danger and hazard incident thereto . . ." and further alleges that he was "attracted thereby and allured thereto."

The complaint alleges that the defendants negligently failed to guard and protect the swimming pool "in such a way that it would be impossible for children to get to and into the swimming pool in their usual practice of playing and running around the swimming pool . . . ," that defendants negligently failed to maintain a proper fence with locked gates so as to make the same safe for children who might be attracted to the swimming pool, and that they failed to "provide any protection or safeguard of any kind for children and infants known to be attracted to and using the swimming pool and playing in and about the same . . . ," that the swimming pool was attractive to children, and was known by the defendants to be likely to attract and allure children to play in and around the same, and that the negligence of the defendants was the sole and proximate cause of the death of Joseph.

The allegations of the complaint are designed to bring the case within the doctrine of attractive nuisance, the requirements for which have been recently set forth in the case of *Kempen v. Green Bay & Miss. Canal Co.* (1974), 66 Wis. 2d 185, 187, 224 N. W. 2d 202, which reiterated the language originally used in *Angelier v. Red Star Yeast* (1934), 215 Wis. 47, 53, 254 N. W. 351:

(1) ". . . that the . . . [possessor of real estate] maintained, or allowed to exist, upon his land, an artifi-

cial condition which was inherently dangerous to children being upon his premises;"

(2) "that he knew or should have known that children trespassed or were likely to trespass upon his premises;"

(3) "that he realized or should have realized that the structure erected or the artificial condition maintained by him was inherently dangerous to children and involved an unreasonable risk of serious bodily injury or death to them;"

(4) "that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or in playing in close proximity to the inherently dangerous condition;"

(5) "and that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained."

We hold here that an insufficiently guarded swimming pool maintained in a residential area may be inherently dangerous to a child four years of age. Having determined this, the question becomes what precautionary steps the owner must take to eliminate the danger, such as are reasonable and do not materially interfere with use of the pool. The allegation as to the "basket-weave" nature of the fence lacks sufficient specificity to indicate that the fence was not a reasonable safeguard, and while the complaint does say that it could be climbed, the height of that fence is not set forth, nor the ease or lack of it with which a four-year-old could surmount such obstacle. However, the complaint does allege that there were two gates which were not locked and, as we must permit "all reasonable inferences" from the allegations in the construction of a complaint on demurrer (*Purtell v. Tehan* (1966), 29 Wis. 2d 631, 139 N. W. 2d 655), the inference that the unlocked gate made the pool accessible to this four-year-old child either because it was in fact open, or because it was easily pushed open, may be made. We do not agree with the complaint that a pool owner must make it "impossible" for children to get into the pool by the erection of artificial barriers. The safeguards must

only be reasonable, and the question of whether the safeguards employed by defendants in this case were reasonable cannot be determined at this stage of the proceedings.

Many previous cases in this court have dealt with the problem of "attractive nuisance," and particularly with the question of what constitutes an "inherently dangerous" condition. In *Kempen, supra,* a seven-and-a-half-year-old child fell from a "spillway or canal overflow" into an adjoining river and was drowned. This court held that a conclusory allegation that the spillway was inherently dangerous was insufficient to state a cause of action, and that additional allegations would be necessary to show that the spillway was constructed in such a manner that the risks were not apparent to the drowned child. The court stated:

". . . the allegation in the complaint here, that the spillway or canal overflow was inherently dangerous to children, is a conclusion, not admitted by demurrer, and . . . in the absence of allegations as to a defect in the structure or other peculiar circumstance, which was hidden from the child or *which a child would fail to appreciate because of his immaturity,* a child must be held to knowledge and appreciation of the obvious risks involved in going along or in playing in close proximity to a spillway or canal overflow, even though the complaint alleges that he was unaware of such risks." *Kempen* at page 192 (emphasis supplied).

One of the leading Wisconsin cases on "inherent danger" is *Schilz v. Walter Kassuba, Inc.* (1965), 27 Wis. 2d 390, 134 N. W. 2d 453, where a ten-year-old child had been injured in a fall from a large pipe protruding from the ground. The court spoke of the obviousness of the danger to the child, saying:

"The risk involved in [playing on the pipes] was simple and obvious. Indeed the challenge offered by the risk of falling is probably what provided the fun. There is no suggestion of any surprising danger, such as instability of the pipes, or unusual slipperiness." *Schilz* at page 394.

The court concluded that, in the absence of any allegation that the pipes were deceptively dangerous, the complaint was insufficient:

"It appears generally to be the rule that a child is bound to appreciate a simple and obvious danger of falling from an object or structure, but is not bound to appreciate a danger presented or exaggerated by a defect in the structure or other peculiar circumstance, which is hidden from the child or *which a child would fail to appreciate because of his immaturity.*
"We conclude that an allegation that the four pipes, as described in the instant complaint, were inherently dangerous to children is a conclusion, not admitted by demurrer, and that as a matter of law plaintiff must be held to knowledge and appreciation of the obvious risk of falling from the pipes even though the complaint alleged she was unaware of it." *Schilz* at pages 396, 397 (emphasis supplied).

The court went on to quote with approval a comment to the Restatement, *Torts* 2d, p. 203, sec. 339:

"There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child *of an age to be allowed at large.* To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it." (Emphasis supplied.)

The term "of an age to be allowed at large" is not self-defining. Does it refer merely to a child's physical ability to walk a distance? We think not. It must refer to the child's possession of maturity sufficient to travel "at large" on his own, unsupervised. Does travel "at large" include crossing of busy highways or intersections, for example, or venturing into a neighbor's backyard for a look at the swimming pool? Whether a four-year-old

may be "at large" to the extent revealed by the facts and circumstances of this case is a question for the finder of fact.

If Joseph Ajack was "of an age to be allowed at large," the Restatement comment suggests that he should be held to understand common dangers, such as those of water bodies. While this principle was properly applied to prevent liability to the older children, ages seven and ten, involved in the *Kempen* and *Schilz Cases,* we conclude that it is not applicable here: a four-year-old may be "of an age to be allowed at large" to a limited extent, and yet will not be held, as a matter of law, to an appreciation of the hazards of a swimming pool. *Kempen* and *Schilz* both recognize the existence of this situation; in the passages quoted above, both cases state that a child will not be held to knowledge of even a simple and obvious danger which he might "fail to appreciate because of his immaturity." This is precisely the situation in the present case.

In *Thiel v. Bahr Construction Co.* (1961), 13 Wis. 2d 196, 108 N. W. 2d 573, this court was confronted with a similar situation involving an obvious danger to a very young child: a four-year-old was injured by an oil-burning flare maintained at a sewer construction site in a residential area. The danger of the flare would have been obvious to anyone old enough to understand fire. As to a four-year-old, however, this court held that the question of whether the danger was obvious could not be resolved on demurrer, nor could the reasonableness of safeguards be adequately evaluated without a full record:

"The question raised is too grave to be resolved as a matter of law from the pleadings before us. The issue can be raised in the answer to the complaint and testimony produced at the trial as to the general use of flares of the type used by the defendant in sewer-construction work; also as to whether or not there are other devices such as electric lights, battery-operated lights, lanterns, or glass-inclosed flares that can provide an effective

warning without an undue burden being placed upon the defendant when small children are known to be in the vicinity of the work being done. A proper determination of the issue can only be made from a record reflecting all of the facts and circumstances leading up to the injury." *Thiel* at 200.

In the present case we hold, similarly, that whether or not Jospeh Ajack could be held to appreciate the danger of the pool, and the reasonableness of defendants' safeguards, cannot be decided at this point. Where the complaint alleges that a four-year-old gained entrance to an insufficiently protected swimming pool located in a residential area, it is sufficient to withstand demurrer.

Other courts have allowed attractive nuisance actions where children have been injured or drowned in private swimming pools. *Samson v. O'Hara* (Fla. App. 1970), 239 So. 2d 151, permitted a suit where the child was only eighteen months old, although there was an additional allegation that the pool gate had been left standing open. *Giacona v. Tapley* (1967), 5 Ariz. App. 494, 428 Pac. 2d 439, allowed an attractive nuisance action where a five-year-old had crawled through a hedge surrounding the pool. *King v. Lennen* (1959), 53 Cal. 2d 340, 1 Cal. Rptr. 665, 348 Pac. 2d 98, allowed an attractive nuisance suit where the child involved was only eighteen months old, although the pool was protected only by an easily penetrated rail fence.

In *Staley v. Security Athletic Assn.* (1963), 152 Colo. 19, 380 Pac. 2d 53, the court upheld the granting of a directed verdict against the plaintiff where his four-year-old son had been drowned in a swimming pool owned by a private club. The pool area was closed, enclosed by a chain-link fence six-feet high with a three-strand barbed-wire apron at the top extending at an angle of about 45 degrees from the pool. Although the single gate was locked, its bottom was about eight inches above the center of the somewhat concave pedestrian dirt path leading to and from the pool, creating the apparent means of entry.

The court held that the defendant had made every reasonable effort to keep people out of the pool area by proper fencing, noting that the defendant "was not obliged to erect and maintain an impenetrable wall around the area or to make it boy proof. . . ." It is clear that in the *Staley Case* the plaintiff was unable to prove the fifth element in a cause of action for attractive nuisance, in that safeguards had reasonably been provided which obviated any inherent danger. Although the *Staley* court also held that the presence of the water was a danger obvious to a child four years of age, we find that conclusion unpersuasive. Whether the danger here was obvious to this four-year-old is a question of fact to be resolved in the trial court.

*By the Court.*—Order affirmed.

ROBERT W. HANSEN, J. *(dissenting).* Did the defendants, husband and wife, breach a duty owed by them to the neighbor's child who came onto their property as a trespasser?

The homeowning couple had put a swimming pool in their backyard. As a municipal ordinance required, they had enclosed the pool with a fence, with entry to the pool area obtained through either one of two gates.

A four-year-old child of a neighbor came, without permission and unobserved, into that backyard in the daytime, and, either by climbing the fence or entering through a gate, got to the pool and drowned.

The issue presented is whether, under the law of this state, these owners of this property and pool are responsible in any degree for the death of that child.

The complaint attempts to allege a cause of action in negligence, but it does not allege any breach of the general duty owed by a property owner to a trespasser.[1]

---

[1] *See: Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 125, 126, 141 N. W. 2d 902, this court holding: "If the person is a trespasser, the owner of land has the duty to refrain from wilful and

Instead it seeks to state a cause of action under the "attractive nuisance" doctrine, under which a landowner may, under certain circumstances, be held liable to a trespassing child for injuries.

Such cause of action is in tort for negligence.[2] In this state there are five requirements as to pleading or proof in an "attractive nuisance" cause of action.[3] A key requirement is that the structure or artificial condition maintained on the premises be "inherently dangerous."

intentional injury. *Shea v. Chicago, M., St. P. & P. R. Co.* (1943), 243 Wis. 253, 257, 10 N. W. 2d 135. He is not liable for injury to trespassers, as a general rule, caused by his failure to exercise reasonable care to put his land in safe condition for them, nor is he obliged to refrain from operations or activities that might cause injury. . . ."

[2] *Mazurkiewicz v. Pawinski* (1966), 32 Wis. 2d 211, 222, 145 N. W. 2d 186, quoting *Nechodomu v. Lindstrom* (1956), 273 Wis. 313, 319, 77 N. W. 2d 707, 78 N. W. 2d 417, stating: " '. . . the phrase "attractive nuisance" indicates no special departure or exception from the ordinary run of negligence cases.' "

[3] *Kempen v. Green Bay & Mississippi Canal Co.* (1974), 66 Wis. 2d 185, 187, 188, 224 N. W. 2d 202, holding the five requirements to be: " '(1) . . . that the former [possessor of real estate] maintained, or allowed to exist, upon his land, an artificial condition which was *inherently dangerous* to children being upon his premises . . . .

" '(2) . . . that he knew or should have known that children trespassed or were likely to trespass upon his premises . . . .

" '(3) . . . that he realized or *should have* realized that the structure erected or the artificial condition maintained by him was *inherently dangerous* to children *and* involved an *unreasonable risk* of serious bodily injury or death to them . . . .

" '(4) . . . that the injured child, because of his youth or tender age, *did not discover* the condition *or realize the risk involved* in going within the area, or in playing in close proximity to the inherently dangerous condition . . . .

" '(5) . . . that safeguards could *reasonably* have been provided which would have *obviated the inherent danger* without materially interfering with the purpose for which the artificial condition was maintained . . . .' " (Emphasis supplied.) Quoting *Mazurkiewicz v. Pawinski, supra,* footnote 2, at pages 215, 216.

Nowhere in the complaint in the case before us is it alleged that a swimming pool in a backyard, fenced or unfenced, is "inherently dangerous." The closest the complaint comes to such allegation is the conclusory allegation that the child involved was unaware ". . . of the fact that without proper supervision there are inherent dangers involved in wading and playing in a swimming pool."

Even if such statement were to be liberally construed to allege an inherency of danger, it is not enough to withstand demurrer. Dealing there with a spillway or canal alleged to be attractive and dangerous to children, our court, in *Kempen,* held:

". . . the allegation in the complaint here, that the spillway or canal overflow was inherently dangerous to children, is a conclusion, not admitted by demurrer, and . . . in the absence of allegations as to a defect in the structure or other peculiar circumstance, which was hidden from the child or which a child would fail to appreciate because of his immaturity, *a child must be held to knowledge and appreciation of the obvious risks involved in going along or in playing in close proximity to a spillway or canal overflow,* even though the complaint alleges that he was unaware of such risks."[4]

In requiring more than an allegation of "inherently dangerous to children" in a complaint founded on the "attractive nuisance" doctrine, in *Kempen,* it is made clear that for a condition to be held "inherently dangerous" under the "attractive nuisance" doctrine, not only must the condition complained of be one that is "highly dangerous," but also it must be one that is not "obvious" to the child involved. *Kempen* holds that a child ". . . must be held to knowledge and appreciation of the obvious risks involved. . . ." There such risk was in going along or in playing in close proximity to a spillway or canal.[5]

---

[4] *Id.* at page 192. (Emphasis supplied.)

[5] *Id.* at page 192. *See also: Massino v. Smaglick* (1958), 3 Wis. 2d 607, 89 N. W. 2d 223, citing *Nechodomu v. Lindstrom,*

Here, in the case before us, that risk was in going along or in playing in close proximity to a swimming pool. If there could be any doubt as to the unmistakable meaning and clear applicability of the *Kempen* holding, it vanishes with a review of the three cases upon which *Kempen* relied and which it quoted at length.

The first such case relied upon is the *Schilz Case*.[6] In that case, where a child fell from a large pipe protruding from the ground, this court held the risk of fall to be "obvious,"[7] and the child "bound to appreciate a simple and obvious danger of falling."[8] The court, in *Schilz,* quoted with approval the comment to a tentative draft of the Restatement section on "attractive nuisances," stating that:

"There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully under-

---

*supra,* footnote 2, this court holding at page 611: "[T]he special verdict and the instructions of the court used the words 'inherently dangerous.' . . ." And concluding at page 612: "Some authorities interpret this language to mean that the condition or instrumentality must in and of itself be 'highly dangerous' or *'per se* dangerous.' Wisconsin, like many other states, uses the term 'inherently dangerous.' We think they all mean the same thing."

[6] *Schilz v. Walter Kassuba, Inc.* (1965), 27 Wis. 2d 390, 134 N. W. 2d 453.

[7] *Id.* at page 394, this court holding: "The risk involved in [playing on the pipes] was simple and obvious. Indeed the challenge offered by the risk of falling is probably what provided the fun. There is no suggestion of any surprising danger, such as instability of the pipes, or unusual slipperiness."

[8] *Id.* at pages 396, 397, this court holding: "It appears generally to be the rule that a child is bound to appreciate a simple and obvious danger of falling from an object or structure, but is not bound to appreciate a danger presented or exaggerated by a defect in the structure or other peculiar circumstance, which is hidden from the child or which a child would fail to appreciate because of his immaturity. We conclude that . . . as a matter of law plaintiff must be held to knowledge and appreciation of the obvious risk of falling from the pipes even though the complaint alleged she was unaware of it."

stood and appreciated by any child *of an age to be allowed at large.* To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it."[9]

The second case cited and relied upon in *Kempen* is the *Mazurkiewicz Case.*[10] There a child had been injured while playing on a water ski jump. The issue was stated to be whether the water ski jump ". . . can be deemed [not] inherently dangerous to children even if alleged to be so."[11] While inferring from the complaint that children used the water ski jump for sliding and jumping into the water, the court found that the ". . . result involved in so doing was simple and obvious. . . ."[12] In *Mazurkiewicz,* the court quoted the Restatement comment that the "attractive nuisance" doctrine does not extend " '. . . to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them.' "[13] The court gave weight to the fact that the plaintiff "needed no such warning" because she had, previous to her fall, requested the defendant to move his boat that was tied to the water ski jump.[14]

The third case quoted at length and followed in *Kempen* is the *Kastenson Case.*[15] There our court held that, as a matter of law, plywood sheets leaning up against a plow were not "inherently dangerous" to the child who used

[9] *Id.* at page 395, quoted now in Restatement, 2 *Torts* 2d, p. 203, sec. 339, ch. 13, comment *j* (1965). (Emphasis supplied.)

[10] *Mazurkiewicz v. Pawinski, supra,* footnote 2.

[11] *Id.* at page 216.

[12] *Id.* at page 216.

[13] *Id.* at page 217, quoting Restatement, 2 *Torts,* p. 922, sec. 339, comment *b.*

[14] *Id.* at page 218.

[15] *Kastenson v. Kastenson* (1972), 54 Wis. 2d 401, 195 N. W. 2d 454.

them as a ramp to get to the top of the plow. There, as in the earlier cases, the risk was found to be "obvious or apparent to the minor child."[16] The *Schilz* rule was reiterated that a child is bound to appreciate a simple and obvious danger,[17] and our court concluded in *Kastenson* that ". . . as a matter of law respondent child must be held to knowledge and appreciation of the obvious risk of falling from the plywood sheets, even though the complaint alleged he was unaware of it."[18] In *Kastenson,* our court pointed out that ". . . the view of the plow was unobstructed from three directions."[19] In the case before us, the view of the pool or fence around it was unobstructed from all four directions. There is no allegation of any defect or circumstance hidden from the view of the child or creating a nonobvious exaggeration of the risk involved.[20]

The three cases reviewed—*Schilz, Mazurkiewicz* and *Kastenson*—support and buttress the *Kempen* holding that, for a structure or artificial condition to constitute an "attractive nuisance" in this state, the risk or danger it presents must be one that is not "obvious" to the child involved. In *Kempen,* this court held that the dangers involved in going along or in playing in close proximity to a spillway or canal overflow were such obvious dangers, obvious even to a child of tender years. The danger involved in wading, swimming or walking alongside a

[16] *Id.* at page 405.

[17] *Id.* at page 405, quoting *Schilz v. Walter Kassuba, Inc., supra,* footnote 6, at pages 396, 397.

[18] *Id.* at page 405.

[19] *Id.* at page 405.

[20] *Id.* at page 405, this court holding: " '. . . It appears generally to be the rule that a child is bound to appreciate a simple and obvious danger . . . but is not bound to appreciate a danger presented or exaggerated by a defect in the structure or other peculiar circumstance, which is hidden from the child or which a child would fail to appreciate because of his immaturity.' " Quoting *Schilz v. Walter Kassuba, Inc., supra,* footnote 6, at page 396, 397.

swimming pool is exactly as obvious as is the danger involved in wading, swimming or walking alongside a canal overflow or spillway. Obviousness of such danger does not vary as between pool or pond or canal and spillway. Such obvious danger, in the words of *Schilz,* is one of the dangers ". . . of fire and water or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large."[21] Such holding that the danger was here obvious is made easier since the complaint here alleges that the child involved had ". . . frequently, with other children of tender years waded, swam and played in the defendants Guzinski swimming pool. . . ." Such prior use of the pool by the child involved buttresses the holding that this particular child must be held to have known and appreciated the dangers of this particular pool. So we would follow the four cases cited in holding the swimming pool here, as a matter of law, not to have been an "attractive nuisance" under this complaint and these circumstances.

Without distinguishing between the two, a second cause of action appears to have been included in plaintiff's complaint. This deals with the adequacy of fence and gates to prevent ingress by children, rather than with the swimming pool as maintained being an "attractive nuisance." The duty claimed to have been breached by the defendant homeowners is alternatively stated in the complaint: (1) "The defendants Guzinski negligently and carelessly failed to guard and protect the swimming pool in such a way that it would be impossible for children to get to and into the swimming pool . . . ." and (2) "The defendants Guzinski negligently and carelessly failed to maintain a proper fence with locked gates so as to make the same safe for children. . . ." As to such claim of such duty breached, the complaint faults the fence enclosing the pool as being "constructed in a 'basket

---

[21] *See:* Footnote 9.

weave manner'" so that, the complaint alleges, it presented a ". . . step ladder at each support post thereof." No claim is made in the complaint that the gates were not latched, but it is alleged that ". . . at all times material hereto neither of those gates were locked." So the jury questions are seen to be whether the fence should have been built differently, or the gates should have been locked with padlock and key.

Such allegation of such duty owed and breached goes well beyond seeking to meet the fifth requirement of the five-fold test for an action for "attractive nuisance." That fifth test does require that allegation or proof there be that ". . . safeguards could reasonably have been provided which would have obviated the inherent danger. . . ."[22] But that final of the five requirements becomes operative only after establishing the existence of a structure or artificial condition as being both highly and nonobviously dangerous. Where a danger has been held, as it is here, to have been obvious to the child involved, alleging or establishing that a different type of fence or padlocking the gate would have made the place safer for children does not create a cause of action under the "attractive nuisance" doctrine. It is all five requirements that must be met for such action, not just one among them. Even if it were here alleged and could be proven that barbed wire along the top of the fence would discourage fence-climbing and a padlock-and-key arrangement would prevent gate-opening by children, such claim or proof of the availability of superior safeguards would not support an action based on the "attractive nuisance" doctrine. With the danger of this particular pool held to have been obvious to this particular child at the time of entry, there is no basis in law for an action by this plaintiff against these defendants founded on the "attractive nuisance" doctrine.

[22] *Kempen v. Green Bay & Mississippi Canal Co., supra,* footnote 3, at page 188.

Holding that this swimming pool did not constitute an "attractive nuisance" to this child trespasser makes it unnecessary to reach or discuss that matter, not here raised or briefed, of the applicability of sec. 29.68, Stats. However, holding such swimming pool to be such "attractive nuisance" does encounter the clear mandate of that statute. As to trespassers,[23] sec. 29.68 provides:

"**Liability of landowners. (1)** SAFE FOR ENTRY; NO WARNING. An owner, lessee or occupant of premises *owes no duty to keep the premises safe for entry or use* by others *for* hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, *water sports, sightseeing, or recreational purposes,* or to give warning of any unsafe condition or use of or structure or activity on such premises to persons entering for such purpose, except as provided in sub. (3)." (Emphasis supplied.)[24]

This statute has been held in a recent case to apply to urban and residential areas, as well as to farmlands and non-urban areas.[25] That case involved an injury sustained in an unlighted parking area of the city of Racine. There, as this court put it: "The defendant contends that

---

[23] Sec. 29.68 (2), Stats., applies to persons given permission by landowners to enter and use premises for certain purposes including: ". . . to proceed with water sports or recreational uses upon such premises. . . ." Such permitted use ". . . does not thereby extend any assurance that the premises are safe for such purpose, . . ." unless such permission was ". . . granted for a valuable consideration. . . ." Sec. 29.68 (3). For a case where such valuable consideration was found to be present (where permission to use swimming facilities was granted by a lake resort owner to create ". . . prospective customers through permitting the use of their swimming facilities"), *see: Copeland v. Larson* (1970), 46 Wis. 2d 337, 347, 174 N. W. 2d 745.

[24] Sub. (3) relates solely to persons given permission for entry or use of premises by the landowner, providing such permission was "granted for a valuable consideration." Sub. (3) does not apply to trespassers, child or adult, for, as to trespassers, no permission to enter or use is given and no permission granted for a valuable consideration exists.

[25] *Goodson v. Racine* (1973), 61 Wis. 2d 554, 213 N. W. 2d 16.

since, pursuant to sec. 29.68, Stats., an owner of property is not liable for injuries sustained on its property absent allegations and proof of a wilful or malicious failure to guard or warn against a dangerous condition . . . that the defendant's demurrer should have been sustained. . . ."[26] While holding that the municipality was not an owner of property within the ambit of sec. 29.68, our court held ". . . the defendant correctly asserts the effect of sec. 29.68. . . ."[27] Under this holding, a swimming pool in the backyard of a city landowner is covered by sec. 29.68 as clearly as is a pond on the farm of a rural landowner.

In the case before us, the plaintiff's complaint specifically alleges that, on previous occasions, the child involved had, with the permission of the landowner "waded, swam and played in the defendants Guzinski swimming pool." There is no basis for inferring other than that the return daytime visit of the child, this time without permission and as a trespasser, was for any purpose other than that of again wading, swimming or playing in the pool. In fact, no other reason for climbing a fence and getting into a swimming pool can be imagined. All three purposes—wading, swimming and playing in the pool—come within the sec. 29.68 language of entry for "water sports, sightseeing or recreational purposes." Thus, under sec. 29.68, to a trespasser entering or using the premises for the purpose of wading, swimming or playing in a pool or pond, the landowner "owes no duty to keep the premises safe for entry or use." It follows that, under sec. 29.68 as well as under the "attractive nuisance" decisions of this court, no duty owed by this landowning couple to this child trespasser was here breached.

The writer would reverse with directions to sustain the demurrer of the defendants and dismiss the complaint of the plaintiff.

---

[26] *Id.* at pages 556, 557.
[27] *Id.* at page 557.

I am authorized to state that Mr. Justice LEO B. HAN-
LEY and Mr. Justice CONNOR T. HANSEN concur in this
dissenting opinion.