Rick CHRISTIANS, a minor, by his guardian *ad litem,* Howard A. Davis, and Geraldine Hammer, Plaintiffs-Respondents,

Philip CHRISTIANS, Plaintiff,

v.

HOMESTAKE ENTERPRISES, LTD., and Royal Globe Insurance Co., Defendants-Appellants-Petitioners,

Merlin GREEN, Brent Stange, Wisconsin Farmers Mutual Ins. Co., and Michael Gossfield, Defendants.†

Supreme Court

*No. 79–852. Argued February 10, 1981.—Decided March 31, 1981.*

(Also reported in 303 N.W.2d 608.)

† Motion for reconsideration denied, with costs, on May 11, 1981.

For the petitioners there were briefs (in court of appeals) by *James C. Herrick, Jr.,* and *Herrick Law Office, S.C.,* of Fond du Lac, and oral argument by *James Herrick, Jr.*

For the respondents there was a brief (in court of appeals) by *William M. Cannon* and *Habush, Habush & Davis, S.C.,* of Milwaukee, and oral argument by *Mr. Cannon.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a decision of the court of appeals entitled *Christians v. Homestake Enterprises, Ltd.,* 97 Wis.2d 638, 294 N.W. 2d 534 (Ct. App. 1980), which affirmed a judgment of the circuit court for Dodge county, Henry G. Gergen, Jr., Circuit Judge, against landowner Homestake Enterprises, Ltd., awarding damages to the plaintiff who was injured by the explosion of blasting caps which were removed from defendant Homestake's property by trespassing children. Although the plaintiff was not one of the trespassing children we conclude, as did the trial court, that the attractive nuisance doctrine[1] is applica-

---

[1] We recognize that the use of the phrase "attractive nuisance" to describe the particular phase of the law of negligence in this state relating to the possessor's liability to a child trespasser is a misnomer. The phrase is picturesque but confusing and misleading. The doctrine is not one of allurement and is not limited to very young children. Because the phrase "attractive nuisance" is

ble to the instant case. Because of error in the jury instructions, we reverse the judgment and remand the case to the circuit court for a new trial.

## I.

The incident giving rise to this lawsuit involved a small part of a farm which at the time of injury was owned and occupied by Homestake. This part of the farm and the buildings had previously been leased to a tenant and his family as a residence. The tenant, by occupation, was a welder, but he engaged in several trades. The tenant had brought onto the farm tools, four trucks, trailers, cars, iron, lumber and a steel box containing blasting caps. The tenant had previously done black-topping, seal-coating, and heavy construction and had used blasting caps in his business; during his tenancy, however, he was not involved in a business in which blasting caps were a necessity, and he never did any blasting during that time. During the tenancy the tenant had allowed the Beaver Wrecking Company to use the barn to store material, including large amounts of army surplus merchandise. The tenant was evicted on May 8, 1973, but did not remove his non-household belongings upon eviction. He testified that Homestake did not allow removal thereafter.

The steel box containing blasting caps and numerous caps lying near the box outside the barn were observable from a minibike trail which had been created on the land by trespassing neighborhood children.

George Hickey, the secretary of Homestake, visited the land several times both before and after the eviction.

generally used as the shorthand description of the applicable legal doctrine, we use the phrase in this opinion. The Restatement of Torts (Second) (1965) entitles sec. 339, "Artificial Conditions Highly Dangerous to Trespassing Children."

Prior to the incident in which plaintiff was injured Homestake had inspected the property. Homestake knew that the farm was cluttered with the tenant's belongings and knew that children frequently trespassed on the land. There was testimony that Homestake had never been advised that there were blasting caps on the part of the farm the tenant had leased, and Homestake's witnesses claimed that Homestake did not know of the presence of the steel box or the blasting caps. There was also testimony that indicated that people in the area knew of the existence of the blasting caps.

On August 1, 1973, two boys, ages fourteen and eleven, trespassed on the property and took with them several blasting caps. Sometime later that day, the two boys met Rick Christians, the plaintiff, who was fifteen years of age. The plaintiff agreed to meet the boys later at the site of their "fort." When he arrived, a campfire was burning. The fourteen-year-old threw the caps into it and all three boys ran away from the fire. No explosion occurred. There was evidence that as long as ten or more minutes had elapsed after the caps were thrown into the fire; that the flames had disappeared; that the fire was smoldering; that the plaintiff had returned to the fire; and that when the plaintiff extended his hand toward the fire, the caps exploded, and plaintiff's hand was severely injured.

At trial plaintiff testified that he had been warned that blasting caps could be dangerous and that he knew there were blasting caps in the fire. However, he also testified that he did not appreciate the extent of the danger and that he had thought it was safe to approach the fire when he did because he believed that the caps would already have exploded if they were going to do so.

Plaintiff's suit proceeded initially on two theories, attractive nuisance and common law negligence. After hearing the evidence, the trial court rejected the com-

mon law negligence theory on the ground that the children involved were trespassers. The trial court further concluded that the attractive nuisance doctrine was applicable. The trial court gave a modified Jury Pattern Instruction 1011, Wis. J I—Civil relating to attractive nuisance. The modification related to Homestake's knowledge of the blasting caps on its land.[2] The jury

[2] In addition to instructions relating to the duty of each of the three boys to exercise ordinary care for the safety of himself and of others, the trial court gave the following instructions which relate to the doctrine of attractive nuisance. The instructions differ from the pattern instructions on attractive nuisance in the use of the word "negligence" in the third from the last paragraph and in the addition of the last two paragraphs. The next to the last paragraph is taken from Wis. J I—Civil, No. 8020, entitled "Duty of Possessor of Land to User" and the last paragraph is taken from Wis. J I—Civil, No. 1005, entitled "Negligence Defined."

The court instructed the jury, *inter alia*, as follows:

"Possessors of land are under a duty to keep those parts of their land on which they know, or ought to know, children are likely to be present, free from artificial conditions which involve an unreasonable risk of bodily injury or death to children. The duty is to protect children from danger which they are unlikely to appreciate, but not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger. The duty to protect children in the above circumstances does not apply to children who know or should know of the danger involved in the condition.

"An artificial condition as used in these instructions includes the presence of blasting caps on the premises owned by Homestake. Blasting caps are inherently dangerous.

"An artificial condition may be peculiarly dangerous to children because of their tendency to intermeddle with things which are notoriously attractive to them, but this is not the only childish characteristic which may make an artificial condition, which involves no serious risk to an adult, highly dangerous to children. The lack of experience and judgment normal to young children may prevent them from realizing that a condition observed by them is dangerous, or, although they realize that it is dangerous, may prevent them from appreciating the full extent of the risk.

found for the plaintiff and assessed damages at $75,000 for personal injuries, $25,000 for impairment of future

"If the artificial condition was one which was notoriously attractive to children and the possessor knew the children were playing upon the premises, or, in the exercise of reasonable diligence and prudence, ought to have known that children were likely to play upon the premises, then it was his duty to provide such safeguards as would eliminate or reduce the danger to children, providing the use of such safeguards would not interfere with the practical use of the premises.

"Thus your inquiry is directed to whether or not each defendant, Homestake as to any negligence on its part, and Green as to any negligence on his part, created, allowed to exist, or maintained upon the land an artificial condition which was inherently dangerous to children whom he knew or should have known were upon or likely to be upon his premises as trespassers or otherwise; whether or not the defendant knew or should have known that the artificial condition was inherently dangerous to children and involved an unreasonable risk of bodily injury or death to them; and, whether or not the child, because of his youth or tender age, did not discover the condition or understand the risk involved in going upon or close to the artificial condition (and whether or not safeguards could reasonably have been provided which would have eliminated or reduced the inherent danger without materially interfering with the purpose for which the artificial condition was maintained).

"In the performance of the duty, a possessor of premises is required to exercise ordinary care to discover conditions or defects in the premises which expose a person to an unreasonable risk of harm. If any such unreasonable risk of harm existed and the possessor was aware of it, or if in the exercise of ordinary care he should have been aware of it, then it was his duty to either correct the danger or to warn such person of the existence of such danger.

"...

"A person is negligent when he fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission

earning capacity, and $1,709.60 for past medical expenses.

On appeal the court of appeals held the doctrine of attractive nuisance inapplicable on the ground that the plaintiff was not a trespasser. The judgment, however, was affirmed, the court of appeals holding that Homestake owed the plaintiff the same duty that any owner of land owes a nontrespasser. The court of appeals reviewed the evidence and concluded that there was credible evidence to support the findings of the jury. The court of appeals further concluded that public policy did not justify relieving Homestake from liability. We reverse the decision of the court of appeals and remand the cause for a new trial.

## II.

The first issue is whether the trial court erred in concluding that the "doctrine of attractive nuisance" applies to this case rather than the common law of negligence.

A cause of action in negligence sets forth four elements: (1) A duty of care on the part of the defendant; (2) A breach of that duty; (3) A causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.[3]

The defendant persuaded the trial court that the plaintiff was a trespasser and that the defendant could not be found liable to the plaintiff under the common law doctrine of negligence because the possessor of land

will subject him or his property, or the person or property of another to an unreasonable risk of injury or damage."

[3] *Coffey v. Milwaukee*, 74 Wis.2d 526, 531, 247 N.W.2d 132 (1976); *Ollerman v. O'Rourke Co., Inc.* 94 Wis.2d 17, 46, 288 N.W.2d 95 (1980); Prosser, *Law of Torts* sec. 30, p. 143 (4th ed. 1971); 2 Restatement (Second) of Torts, sec. 281 (1965).

does not have a duty to a trespasser to exercise ordinary care to put the land in a safe condition. The possessor's duty to the trespasser is to refrain from willful and intentional injury; the possessor is not obliged to refrain from activities that might cause injury, although in some circumstances there may be a duty to warn known trespassers of highly dangerous conditions. *Antoniewicz v. Reszczynski*, 70 Wis.2d 836, 842, 236 N.W.2d 1 (1975).

Because the trial court characterized the plaintiff as a trespasser, the trial court concluded that the defendant's liability was governed by the doctrine of attractive nuisance. The attractive nuisance doctrine, sometimes referred to as the turntable doctrine, is one of the first and best known departures from the strict common law rule that the possessor of land owed no duty of care to trespassers. 2 Harper & James, *The Law of Torts* sec. 27.5 (1956).[4]

The court of appeals, on the other hand, concluded that the plaintiff was not a trespasser and that Homestake owed the plaintiff "the same duty that any owner of land owes a nontrespasser. This duty is to exercise ordinary care and is breached if Homestake's conduct foreseeably created an unreasonable risk of harm. *Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 288 N.W.2d 95 (1980). . . . Homestake's duty was properly stated [by the trial court] to require the exercise of ordinary care to discover and to correct any dangerous condition in-

---

[4] For a discussion of the development of the doctrine of attractive nuisance, *see Alston v. Baltimore & O. R. Co.*, 433 F. Supp. 553, 559-561 (D. D.C. 1977); *McGettigan v. Nat'l Bank*, 320 F.2d 703, *cert. den.*, 375 U.S. 943 (1963); *Schilz v. Walter Kassuba, Inc.*, 27 Wis.2d 390, 134 N.W.2d 453 (1965); Aderman, *The Attractive Nuisance Doctrine with Emphasis Upon Its Application in Wisconsin*, 21 Marq. L. Rev. 116 (1937); Comment, *Current Attractive Nuisance Cases in Wisconsin & Other Jurisdictions*, 42 Marq. L. Rev. 64 (1958); Note, *Negligence—Attractive Nuisance Doctrine*, 1949 Wis. L. Rev. 598.

volving unreasonable, foreseeable risk of harm." 97 Wis. 2d at 641, 646. This definition of duty applied by the court of appeals conforms to this court's definition of duty in the usual negligence case. This court has said that "The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . . A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 484, 214 N.W.2d 764 (1974). *See also Coffey v. Milwaukee*, 74 Wis.2d 526, 536, 247 N.W. 2d 132 (1976) ; *Ollerman v. O'Rourke*, 94 Wis.2d 17, 46, 288 N.W.2d 95 (1980) ; *Schilling v. Stockel*, 26 Wis.2d 525, 531–33, 133 N.W.2d 335 (1965) ; Campbell, *Wisconsin Law Governing Automobile Accidents—Part I*, 1962 Wis. L. Rev. 240.

The court of appeals erred, however, in equating the duty of a possessor of land to nontrespassers with the duty applicable in the usual negligence case. In cases involving an owner of land, we are concerned with legal relationships between plaintiffs and defendants for which separate sets of rules have been developed. Traditionally, the possessor's liability to persons on and off the land has been governed by a particularized set of rules limiting liability to specified instances. *See, e.g.,* ch. 13, Liability for Condition and Use of Land, 2 Restatement (Second) of Torts, pp. 167–298 (1965). This court has said that cases involving a possessor of land, although also involving concepts of negligence law, are "not of the mainstream of negligence law in Wisconsin." *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 486, 214 N.W.2d 764 (1974) ; *Ceplina v. South Milwaukee School Board*, 73 Wis.2d 338, 343, 243 N.W.2d

183 (1976).[5] Thus the court of appeals erred in stating categorically that the duty a landowner owes to a nontrespasser is the duty that an alleged tortfeasor has in the ordinary negligence case.

"Duty," a troublesome concept, has been discussed by this court on numerous occasions. *See, e.g., Walker v. Bignell,* 100 Wis.2d 256, 263, 301 N.W.2d 447 (1981); *Ollerman v. O'Rourke Co., Inc.,* 94 Wis.2d 17, 27–28, 46–47, 288 N.W.2d 95 (1980); *Coffey v. Milwaukee,* 74 Wis.2d 526, 535–538, 247 N.W.2d 132 (1976); *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 481, 214 N.W.2d 764 (1974). The concept of duty, as Dean Prosser explains, encompasses "[t]he problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other. . . . The largest single area in which the concept of 'duty' has operated as a limitation upon liability has concerned owners and occupiers of land." *Law of Torts,* sec. 53, p. 324, sec. 57, p. 351 (4th ed. 1971). Different rules have developed regarding the possessor's liability arising out of activities conducted on the land and arising out of conditions of the land (natural and artificial), and different rules have also developed to distinguish between the possessor's liability to persons entering on the land (with or without consent) and to those who have not entered the land. Gregory, Kelvin & Epstein, *Cases and*

---

[5] "The doctrine of attractive nuisance is not a separate cause of action but is merely another form of negligence. It allows a child who can meet the requisite elements that constitute a cause of action under the attractive-nuisance theory a possibility of redress for his injuries whereas he would have been unsuccessful if just attempting to allege plain negligence." *Mazurkiewicz v. Pawinski,* 32 Wis.2d 211, 222, 145 N.W.2d 186 (1966).

"The liability of owners and occupiers steadfastly resisted incorporation into the general framework of a negligence theory." Gregory, Kelvin & Epstein, *Cases and Materials on Torts* 447 (3d ed. 1977).

*Materials on Torts* 448 (3d ed. 1977). As *Antoniewicz v. Reszczynski,* 70 Wis.2d 836, 843, 236 N.W.2d 1 (1975), illustrates, this area of law relating to the duty of a possessor of land to persons on and off the premises is in the process of development.

To determine whether Homestake is under a legal obligation for the benefit of the plaintiff and if so, the nature and scope of that obligation, we begin by looking to the principles of law which have developed relating to the liability of the defendant as a possessor of land. This case apparently involves a condition of the defendant's land rather than the defendant's activity on the land and involves a plaintiff who was not on the land immediately prior to or at the time of injury but who was injured by an object which a child trespasser took from the defendant's land. This court has not previously encountered this type of fact situation.

### III.

Without setting forth its reasoning, the trial court characterized the plaintiff as a trespasser on defendant's land, even though the plaintiff had not entered upon the defendant's land on the day the injury occurred. From the record it appears that plaintiff had visited the tenants' children on defendant's land and had probably trespassed on the land after the tenant was evicted. Nothing in the record indicates that plaintiff was part of the "trespass and removal activities" on the day of the injury. The other boys, without plaintiff's aid, knowledge or encouragement, had trespassed on the defendant's land and had removed the dynamite caps. Plaintiff joined the boys sometime after the caps were removed from the land.

Perhaps the trial court treated the plaintiff as a trespasser because on the facts of this case it determined that plaintiff was in substantially the same position as

his trespassing companions. Plaintiff had previously been on the land; he knew the dynamite caps were on the land; he knew the two boys had trespassed and had removed the caps from the land; and he played with the boys and was in the vicinity of the caps. The trial court could have concluded that on these facts the defendant's liability to the plaintiff should be governed by the same rules which would have governed its liability to the trespassing children had one of them been injured by the caps.

Or the trial court could have concluded, as we conclude, following the reasoning of Dean Prosser,[6] that when a person has been injured away from the possessor's land by an object which a trespassing child had removed from the possessor's land, the same principles of law apply to that person's recovery as apply to recovery by the trespassing child who is either harmed when on the possessor's land by the object located on the land, or harmed off the possessor's land by the object he removed from the land. While noting that there is no question of possessor's immunity when a nontrespasser is injured in a case such as the instant one, Dean Prosser concludes that the nontrespasser's recovery and the possessor's liability to the nontrespasser are justified on the basis of the same concepts and policies as justify the trespassing child's recovery and the possessor's liability to a trespassing child who is injured. Whether the injured person is the trespassing child or a third party, recovery and liability rest on the basis of the possessor's failure to take reasonable care against the foreseeable conduct of the trespassing child and on the need to balance the socially desirable policy of allowing a possessor of land to use the land in his or her own way against the humanitarian concern for the welfare of

[6] Prosser, *Trespassing Children*, 47 Calif. L. Rev. 427, 443–445 (1959); Prosser, *The Law of Torts* sec. 59, p. 367 (4th ed. 1971).

children. Prosser, *The Law of Torts*, sec. 58, p. 359 (4th ed. 1971) ; *Massino v. Smaglick*, 3 Wis.2d 607, 609, 89 N.W.2d 223 (1958) ; *James v. Wisconsin Power & Light Co.*, 266 Wis. 290, 302–303, 63 N.W.2d 116 (1954).[7]

In *Lone Star Gas Co. v. Parsons*, 159 Okla. 52, 14 P.2d 369, 371–2 (1932), the court articulated the reasons for applying the doctrine of attractive nuisance to the non-trespasser who is injured as follows:

". . . [I]n this jurisdiction the doctrine of attractive nuisance is recognized and the same principles are involved in the case where the instrumentality is removable and an outsider may be harmed and where it is the infant who is harmed either off of the premises by a removable instrumentality which he has taken away or upon the premises by a local instrumentality; the difference between the local instrumentality and the removable instrumentality merely being that the one presents no possibility of harm to the outsider, but the other does, but only through the infant as an agency. In jurisdictions recognizing the doctrine, the problems involved in determining whether a duty exists and whether a duty has been breached are discussed under the doctrine of attractive nuisance whether it be the infant or the outsider who was harmed.
". . .
"The doctrine presents a necessity of compromise between the policy of imposing duties restricting a landowner in the use which he makes of his premises and

[7] Where the doctrine of attractive nuisance applies and a nontrespasser plaintiff is injured, the question may arise whether the injury to the nontrespassing plaintiff is "caused by" the dangerous object which was originally on the land to subject the possessor to liability. *See Lone Star Gas Co. v. Parsons*, 159 Okla. 52, 14 P.2d 369, 375 (1932) ; *McGettigan v. Nat'l Bank*, 320 F.2d 703, 709 (D.C. Cir. 1963), *cert. den.*, 375 U.S. 943. Dean Prosser comments that the general rules of causation applicable to negligence cases are followed. "[T]he courts have found no great difficulty in concluding that such conduct [of the trespassing child], and the danger which it carries toward such persons as the plaintiff, is within the risk of what may reasonably be expected of trespassing children. . . ." Prosser, *Trespassing Children*, 47 Calif. L. Rev. 427, 445 (1959).

what he does upon them and a probability of harm that urges the imposition."

In contrast, Professors Harper and James maintain that the doctrine of attractive nuisance has no application to the liability of the possessor to the non-trespassing person who is injured by an object removed from possessor's land by a trespassing child. 2 Harper & James, *The Law of Torts,* sec. 27.5, p 1459 (1956). As Professors Harper and James explain, the doctrine of attractive nuisance is initially significant only to avoid the possessor's traditional immunity from liability to the injured trespasser. This immunity does not come into play when the injured person is not a trespasser. Professors Harper and James assert that the possessor, not protected by the doctrine of immunity from liability to trespassers, owes the non-trespasser a duty to refrain from conduct involving unreasonable likelihood of harm to him, that is, that the possessor of land owes a duty of ordinary care which is the degree of care due under the circumstances. If intermeddling by trespassing children is foreseeable, say Harper and James, the possessor who leaves the dangerous object on the land where the trespassing child may take it is negligent, and such foreseeability extends the scope of risk to people within the limits to which the danger might foreseeably be carried.[8]

If the reasoning of Harper and James is followed, the possessor's liability to the nontrespasser injured outside the land by an object removed from the land by a tres-

---

[8] 2 Harper & James, *The Law of Torts* 1459-1460 (1956).

Harper and James explain that in the instant case the question of duty to the trespasser should not arise as such, but that "the lack of that duty is sometimes tied up with the notion that a possessor of land need not anticipate a trespass, and if this artificial limitation on foreseeability is carried over to the situation where a third party is injured it will stand in the way of a duty to the third party. However the whole modern tendency in our law is to reject the notion that acts must be unforeseeable simply because they are illegal."

passing child depends upon the concepts of ordinary care and foreseeability under the circumstances. If the possessor knows or should know of the presence of children on his land, the care to be exercised is that which is reasonable given the probability that children because of their youth will not discover the condition or will not realize the risk involved in coming within the area made dangerous by it or will meddle with the condition.

If the doctrine of attractive nuisance is applied, and the reasoning of Dean Prosser is followed, the possessor's liability to the nontrespasser injured off the land by an object removed from the land by a trespassing child is also governed by concepts of ordinary care. In this state, fact situations falling within the attractive nuisance doctrine simply represent one type of case within the ordinary rule that a person is liable for injuries resulting to another from failure to exercise the care due under the circumstances. This court has stated that "the attractive nuisance doctrine is grounded in negligence," *Mazurkiewicz v. Pawinski*, 32 Wis.2d 211, 215, 145 N.W.2d 186 (1966) ; it is "but a phase of the law of negligence," *Nechodomu v. Lindstrom*, 273 Wis. 313, 327c, 77 N.W. 2d 707, 78 N.W.2d 417 (1956).

Dean Prosser also views the doctrine of attractive nuisance as part of the law of negligence. Because the doctrine rests on broad humanitarian concern for children's welfare and the conclusion that benefits derived from protecting children justify the costs imposed on the possessor, Gregory, Kelvin & Epstein, *Cases and Materials on Torts* 463 (3d ed. 1977), the doctrine of attractive nuisance is, says Dean Prosser, "a special rule as to children and not a mere limitation upon the immunity to trespassers . . . . [It is] a phase of the broader negligence liability, based upon a failure to take reasonable

care against the foreseeable conduct of the child." Prosser, *Trespassing Child*, 47 Calif. L. Rev. 427, 443 (1959).

The doctrine of attractive nuisance is a specially tailored statement as to liability for breach of due care under specified circumstances. When this is recognized, the similarities of the rationales of Dean Prosser and of Professors Harper and James are readily apparent, and in many cases the determination of the possessor's liability will be the same whichever rationale is used. Nevertheless, because the doctrine of attractive nuisance does set forth with some particularity threshold conditions which must be satisfied before the possessor's "reasonableness" is considered and liability results, in some cases the use of one rationale rather than the other will make a difference in the determination of the possessor's liability.[9]

We recognize that the Harper and James rationale represents the modern view which abandons the traditional distinctions regarding the possessor's liability to licensees, invitees, and trespassers and removes the distinctions between the possessor of land and other persons when their acts and omissions create an unreasonable risk of harm to children. *Cf. McGettigan v. Nat'l Bank of Wash.*, 320 F.2d 703, 707 (D. D.C. 1963). This court abandoned the distinction between licensee and invitee in *Antoniewicz v. Reszczynski*, 70 Wis.2d 836, 839, 236 N.W. 2d 1 (1975), and held that the duty of the occupier of land "toward all persons who come upon property with the consent of the occupier will be that of ordinary care." The court explicitly stated that its holding did not reach so far as to change the existing rules as to the posses-

---

[9] For a discussion of the interrelation of a court's refusal to treat trespassers as if they are invitees or licensees and the attractive nuisance doctrine, *see Alston v. Baltimore & O. R. Co.*, 433 F. Supp. 533 (D. D.C. 1977).

sor's liability to the trespasser. Neither party has requested in the instant case that we change the existing rules as the possessor's liability to the trespasser.[10] Both parties tried the case under the doctrine of attractive nuisance and contend on review that this doctrine governs recovery and liability. Given this posture of the parties, given the fact that the plaintiff's injury can be traced to an object removed from the defendant's land by a trespassing child, given this court's reluctance to impose increased duties on the possessor of land to trespassers, and given the fact that the attractive nuisance doctrine has been developed in this state to guide the application of general negligence principles where a possessor is aware that children trespass upon his property, we conclude that we shall apply the doctrine of attractive nuisance in the instant case.[11]

---

[10] In *McWilliams v. Guzinski*, 71 Wis.2d 57, 60, 237 N.W.2d 437 (1976), the court said: "This case arose prior to our holding in *Antoniewicz v. Reszczynski*, 70 Wis.2d 836, 236 N.W.2d 1 (1975), and we make no comment here concerning the effect of that case, if any, on attractive nuisance doctrine."

[11] For cases applying the attractive nuisance doctrine where the plaintiff is not the trespassing child, see, e.g., *Lone Star Gas Co. v. Parsons*, 159 Okla. 52, 14 P.2d 369 (1932); *McGettigan v. National Bank of Washington*, 320 F.2d 703 (D.C. Cir. 1963), *cert. den* 375 U.S. 943; *Marino v. Valenti*, 259 P.2d 84 (1953); *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958); *Johnson v. Clement F. Sculley Construction Company*, 255 Minn. 41, 95 N.W.2d 409 (1959).

Neither party has argued the applicability of the principle of law set forth in 2 Restatement (Second) of Torts, sec. 364 (1965), relating to the liability of possessors for dangerous artificial conditions to persons outside of the land. It would appear that, for the reasons discussed above, where the plaintiff is a nontrespasser whose injury is caused by a dangerous object removed from the land by a trespassing child, the doctrine of attractive nuisance rather than sec. 364 should govern. Sec. 364 states:

"364 **Creation or Maintenance of Dangerous Artificial Conditions**

"A possessor of land is subject to liability to others outside of

## IV.

We turn to defendant's assertions that the doctrine of attractive nuisance was improperly applied in the case at bar. The doctrine of attractive nuisance is restricted and circumscribed by a number of established limitations, and the defendant contends that it is not liable under the doctrine on the grounds that it did not know that the dynamite caps were on the land, that the jury was erroneously instructed that the defendant had a duty to exercise ordinary care to discover conditions or defects on the land, and that the plaintiff realized the risk involved.

In *Angelier v. Red Star Yeast,* 215 Wis. 47, 254 N.W. 351 (1934), this court clearly set forth the "doctrine of attractive nuisance," without so labeling it, as an extension of the land owner's liability to the child trespasser.[12]

the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if

"(a) the possessor has created the condition, or

"(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or

"(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

[12] The court set forth the doctrine as follows:

"It is our opinion that a possessor of real estate should be subjected to liability to a young child who is injured upon his premises if it be found that the former maintained, or allowed to exist, upon his land, an artificial condition which was inherently dangerous to children being upon his premises; that he knew or should have known that children trespassed or were likely to trespass upon his premises; that he realized or should have realized that the structure erected or the artificial condition maintained by him was inherently dangerous to children and involved an unreason-

Paraphrasing *Angelier* the court has in numerous cases stated the elements of the cause of action as follows:

"(1) . . . that the former [possessor of real estate] maintained, or allowed to exist, upon his land, an artificial condition which was inherently dangerous to children being upon his premises . . . .

"(2) . . . that he knew or should have known that children trespassed or were likely to trespass upon his premises . . . .

"(3) . . . that he realized or should have realized that the structure erected or the artificial condition maintained by him was inherently dangerous to children and involved an unreasonable risk of serious bodily injury or death to them . . . .

"(4) . . . that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or in playing in close proximity to the inherently dangerous condition . . . .

"(5) . . . that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained . . . ."[13]

able risk of serious bodily injury or death to them; that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or in playing in close proximity to the inherently dangerous condition; and that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained." *Angelier v. Red Star Yeast & Products Co.*, 215 Wis. 47, 53, 254 N.W. 351 (1934).

[13] *Nechodomu v. Lindstrom*, 269 Wis. 455, 456, 457, 69 N.W.2d 608 (1955); *Schilz v. Walter Kassuba, Inc.*, 27 Wis.2d 390, 393, 134 N.W.2d 453 (1965); *Mazurkiewicz v. Pawinski*, 32 Wis.2d 211, 215–16, 145 N.W.2d 186 (1966); *Kastenson v. Kastenson*, 54 Wis.2d 401, 403, 195 N.W.2d 454 (1972); *Kempen v. Green Bay & Mississippi*, 66 Wis.2d 185, 187–188, 224 N.W.2d 202 (1974); *McWilliams v. Guzinski*, 71 Wis.2d 57, 61–62, 237 N.W.2d 437 (1976); *Fleury v. Wentorf*, 82 Wis.2d 105, 114, 262 N.W.2d 68 (1977).

In *Angelier* the court said that its decision was in harmony with the Tentative Draft of the Restatement of Torts, the final version of which was published after the *Angelier* decision in 1934.

Although the language adopted by this court in *Angelier* differs somewhat from the language used in the first and second Restatements of Torts, *see* 2 Restatement of Torts sec. 339 (1934) [14] and 2 Restatement (Second) of Torts sec. 339 (1965), this court in applying the *Angelier* rule has frequently quoted the formulation of the rule in the Restatements, has frequently referred to the comments to the Restatements as guides to interpret the Wisconsin rule, and has apparently treated the rule set forth in 2 Restatement (Second) of Torts sec. 339 (1965) as the law of the state. *See, e.g., Brady v. Chicago & N.W. R. Co.,* 265 Wis. 618, 624, 62 N.W.2d 415 (1954); *James v. Wisconsin Power & Light Co.,* 266 Wis. 290, 295, 296–297, 63 N.W.2d 116 (1954); *Nechodomu v. Lindstrom,* 273 Wis. 313, 325, 78 N.W.2d 417 (1956); *Massino v. Smaglick,* 3 Wis.2d 607, 611, 89 N.W.2d 223 (1958);

---

[14] Sec. 339, Restatement of Torts (1934) provides as follows:

"339 **Artificial conditions highly dangerous to trespassing children.**

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

*Schilz v. Walter Kassuba, Inc.*, 27 Wis.2d 390, 395, 134 N.W.2d 453 (1965) ; *Mazurkiewicz v. Pawinski*, 32 Wis. 2d 211, 217, 145 N.W.2d 186 (1966) ; *Kastenson v. Kastenson*, 54 Wis.2d 401, 404, 405, 195 N.W.2d 454 (1972) ; *McWilliams v. Guzinski*, 71 Wis.2d 57, 61, 64, 237 N.W.2d 437 (1976).

Sec. 339 of the Restatement (Second) of Torts (1965), like the *Angelier* decision, avoids the misnomer "attractive nuisance." Sec. 339, entitled "Artificial Conditions Highly Dangerous to Trespassing Children" states the rule as follows:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

All five conditions of sec. 339 must be met before a possessor of land can be held liable.

The Wisconsin formulation of the "attractive nuisance cause of action" renders the possessor liable if the possessor "maintained, or allowed to exist" upon the land the artificial condition. Under the formulation in the Sec-

ond Restatement the possessor is liable if the condition is one "of which the possessor knows or has reason to know."[15] The defendant argues that the Wisconsin formulation of the rule makes the defendant liable in this case only if it has knowledge of the caps, because the defendant cannot maintain an artificial condition or allow it to exist where it has no knowledge of the condition. The defendant uses the word knowledge to mean subjective, conscious awareness of the condition. *See* 1 Restatement (Second) of Agency, sec. 9, Comment *c*, p. 46 (1957).

In each of the Wisconsin cases we have read the possessor did have knowledge of the dangerous condition, and there is no discussion of the words "maintained, or allowed to exist." The Wisconsin pattern jury instructions do not elaborate on the words maintained or allowed to exist and are silent as to any requirement that the possessor be aware of the artificial condition.

Several cases in other jurisdictions, however, have indicated that liability may be imposed on a possessor under the attractive nuisance doctrine when the possessor does not have knowledge of the condition but can be charged with such knowledge.[16] We conclude that under

[15] The word "maintains" appeared in sec. 339 of the first Restatement, *see* note 14, *supra*, but was omitted in the second Restatement. *See* Reporter's Notes to sec. 339, Appendix to Restatement (Second) of Torts, p. 130.

[16] *See, e.g., Johnson v. Simpson County Seed & Implement Co.,* 438 S.W.2d 340 (Ky. 1969); *Johnson v. Clement F. Sculley Construction Co.,* 255 Minn. 41, 95 N.W.2d 409 (1959); *Rush v. Plains Township,* 371 Pa. 117, 89 A.2d 200 (1952); *Norton v. City of Easton,* 378 A.2d 417 (Pa. 1977); *McGettigan v. National Bank of Washington,* 320 F.2d 703 (D.C. Cir. 1963)., *cert. denied* 375 U.S. 943; *Dehn v. S. Brand Coal & Oil Co.,* 241 Minn. 237, 63 N.W.2d 6 (1954); *Mennetti v. Evans Construction Co.,* 259 F.2d 367 (3d Cir. 1958); *Latimer v. City of Clovis,* 83 N.M. 610, 495 P.2d 788 (1972).

certain circumstances the law will charge the possessor with knowing of the existence of certain facts concerning its property, whether or not the possessor actually has the knowledge. The possessor cannot simply close its eyes and avoid responsibility.

The issue to be addressed then is what facts will the possessor be charged with knowing so that the possessor can be treated as having maintained the artificial condition or having allowed it to exist. The trial court specifically and painstakingly addressed itself to the issue and its reasoning was carefully and well set forth. In effect, the trial court noted that there were two possibilities: The possessor will be charged to know those facts which it has "reason to know" or the possessor will be charged to know those facts which it "should know." These two views of what a person is charged with knowing appear frequently in the law.

The trial court considered adopting the "reason to know" rule used in sec. 339(b) of the Restatement (Second) of Torts (1965). Comments $g$ and $h$, Restatement (Second) of Torts sec. 339, p 201 (1965), define "reason to know" to mean that the possessor "has information from which a person of reasonable intelligence, or of the superior intelligence of the actor, would infer that the fact in question exists, or would govern his conduct upon the assumption that it does exist."[17] The comment

[17] *See also* sec. 12(1), Restatement (Second) of Torts (1965). The concept is more fully explained in the comment $d$ to sec. 9 of the Restatement (Second) of Agency, p. 46 (1958), as follows:

"*d. Reason to know.* A person has reason to know of a fact if he has information from which a person of ordinary intelligence, or of the superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, if exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence. The inference drawn need not be that the fact exists; it is sufficient that

specifically states that the possessor is under no duty to inspect or police his land to discover whether such conditions exist.

The trial court also considered adopting the rule that a possessor is held to know those facts it "should know." The words "should know" are used to mean that "a person of reasonable prudence and intelligence or the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists." Sec. 12(2), Restatement (Second) of *Torts* (1965).[18]

the likelihood of its existence is so great that a person of ordinary intelligence, or of the superior intelligence which the person in question has, would, if exercising ordinary prudence under the circumstances, govern his conduct as if the fact existed, until he could ascertain its existence or non-existence. The words "reason to know" do not necessarily import the existence of a duty to others to ascertain facts; the words are used both where the actor has a duty to another and where he would not be acting adequately in the protection of his own interests were he not to act with reference to the facts which he has reason to know. One may have reason to know a fact although he does not make the inference of its existence which would be made by a reasonable person in his position and with his knowledge, whether his failure to make such inference is due to inferior intelligence or to a failure properly to exercise such intelligence as he has. A person of superior intelligence or training has reason to know a fact if a person with his mental capacity and attainments would draw such an inference from the facts known to him. On the other hand, "reason to know" imports no duty to ascertain facts not to be deduced as inferences from facts already known; one has reason to know a fact only if a reasonable person in his position would infer such fact from other facts already known to him."

[18] The concept is more fully explained in comment *e*, sec. 9, 1 Restatement (Second) of Agency, p. 48 (1958) as follows:

"A person should know of a fact if a person of ordinary prudence and intelligence, or the intelligence which such person has or professes to have, would ascertain, in the performance of his duty to another, that such fact exists or that there is such a sub-

The terms "reason to know" and "should know" obviously overlap and shade into each other. As defined in sec. 12(2), Restatement (Second) of Torts (1965), the term "should know" includes the phrase "in the performance of his duty to another." This phrase expresses the idea that a possessor would have a duty of care as to trespassers to take action to ascertain the fact in question. The term "reason to know" does not impose this duty to inspect on a possessor. Thus the key difference between the two phrases in the instant case involves the determination as to whether a possessor is to be charged as to trespassers with the duty to perform whatever affirmative action would be taken by a reasonable person in the possessor's position to discover dangers of which he may not be informed.

The trial court rejected the concept of " 'reason to know' without duty of inspection or policing the land" under the facts of this particular case and adopted the concept that the defendant had maintained the artificial condition or allowed it to exist if the possessor "should know" of the condition. The trial court did not, however, instruct the jury as to the definition of "maintained" or "allowed to exist" and did not instruct the jury on what the defendant knew or "should have known." Instead the trial court filled the gap in the attractive nuisance instructions as to the mental state of the possessor by ad-

stantial chance of its existence that his action would be predicated upon its possible existence. The words "should know" express the idea that the person of whom they are spoken has a duty to others to ascertain facts or, if he does not ascertain them, to act with reference to the likelihood that such facts exist. In conduct not involving consensual relations, a person is required to ascertain what would be ascertained by a person of ordinary intelligence exercising ordinary care in the protection of his own interests or those of others, unless he has superior attainments, in which case he is required to exercise the intelligence which he has. In consensual transactions, he should know what a person with the knowledge or skill which he professes would ascertain."

ding the following paragraph to the pattern form of instruction on attractive nuisance:

"In the performance of the duty, a possessor of premises is required to exercise ordinary care to discover conditions or defects in the premises which expose a person to an unreasonable risk of harm. If any such unreasonable risk of harm existed and the possessor was aware of it, or if in the exercise of ordinary care he should have been aware of it, then it was his duty to either correct the danger or to warn such person of the existence of such danger."

This paragraph is borrowed from the pattern instructions relating to duty owed by a possessor to persons on the land with the possessor's consent. Wis. J I—Civil, No. 8020. The paragraph imposes on the defendant a duty to exercise ordinary care under the circumstances to inspect. If the jury determined that in the exercise of ordinary care the defendant should have inspected the property, the jury could have charged the defendant with knowledge of the facts which the inspection would have revealed.

The trial court readily conceded that the choice between "reason to know" and "should know" was "not without difficulty." The trial court stated:

"The fact situation is not without difficulty in terms of application of general principles of law as to child trespassers to land. The concepts of 'reason to know but no duty to inspect' on the one hand and ordinary care in view of knowledge of existence of the clutter of personal property of unknown identity harboring the undisclosed highly dangerous blasting caps coupled with looking the property over on the other hand, afforded a challenge of choice to the trial court. The trial court gave this serious consideration at trial and believes the instructions as given are appropriate as to Homestake considering the unusual circumstances of the case."

The trial court is not alone in finding this choice difficult. The first Restatement adopted one rule and the

second Restatement the other. Dean Prosser, Reporter to the Restatement (Second) of Torts, noted that the phrase "the condition is one of which the possessor knows or *should know*" appearing in the first Restatement was changed in the second Restatement to "the condition is one of which the possessor knows or *has reason to know*" (emphasis added), explaining:

" '[S]hould know' involves an obligation of reasonable care to investigate facts, while 'has reason to know' means that he knows enough to infer that the fact exists, or to govern his conduct on the assumption that it exists. The decisions are unanimous to the effect that the possessor is under no duty to investigate to ascertain whether children are trespassing, or are likely to trespass [citations omitted].[19]

"Nor is he under any duty to investigate to discover whether the condition exists, or whether it may be dangerous to children [citations omitted]. Occasional cases containing language looking in the contrary direction appear to have been those in which the defendant knew enough to put him on inquiry, and so had notice, or 'reason to know'." 2 Appendix, sec. 339, pp. 130–131, Restatement (Second) of Torts (1966).

Professor James criticizes the position taken in the Second Restatement, writing that the Restatement fails to apply the broad negligence principles it elsewhere embraces in dealing with the child trespasser. James, Supplement to Vol. 2, Harper & James, *The Law of Torts,* Comment to sec. 27.5 nn. 81–84, p. 183 (1968) ; James, *Tort Liability of Occupiers of Land: Duties Owed to Trespassers,* 63 Yale L.J. 144, 164 (1953).

---

[19] The Wisconsin *Angelier* formulation, like the first Restatement, used the phrase knew or should have known to refer to the possessor's state of mind as to whether children trespassed or were likely to trespass. Sec. 339 (a) of the second Restatement refers to the possessor knowing or having reason to know that children are likely to trespass. *See* notes 12 and 14, *supra.*

The trial court faced with choosing between the Prosser-Second Restatement position and the James position chose the latter. Although we find merit in the views set forth by the trial court and by Professor James, for the reasons set forth previously (pp. 37–42), we adopt the "reason to know" rule which imposes a less onerous burden on the possessor of land. We hold that the trial court should have instructed the jury that a possessor maintains the condition or allows it to exist if the possessor knows or has reason to know of the existence of the artificial condition on the land. The trial court's instruction went further in imposing a duty of ordinary care to inspect and is therefore erroneous. We conclude that as to the trespassing child, the possessor is under no duty to inspect, but if the possessor knows of facts from which a reasonable person would infer that the condition in question exists, or would govern his conduct upon the assumption that it does exist, the possessor is charged with knowledge of the condition.

We believe the evidence was sufficient to create an issue for the jury to determine whether the defendant knew or had reason to know of the existence of dynamite caps. This case does not present a situation in which the tenant's belongings left on the land were a few, readily inventoried, simple household items; nor does this case present a fact situation in which someone brought the items onto the land a short time before the accident. In the case at bar the tenant left an accumulation of miscellaneous property of which the defendant had been aware for many months. The defendant had acquired a large amount of unusual property which originally belonged to a tenant of many trades and occupations and to a wrecking company. Neither the tenant nor the defendant had identified or inventoried the property. The defendant had looked over the land and the

property on numerous occasions and had evidenced concern about the accumulation of property. The defendant allowed the tenant's property to remain on the land without making an inventory and without inquiring of the tenant as to its nature. The caps were on the ground in open view. People in the area knew of the existence of the caps. Children trespassed on the land in the area near the property.

The jury could have concluded on the basis of the evidence that despite the defendant's denial the defendant did have knowledge of the caps. Or the jury could have concluded on the basis of the evidence that the defendant had reason to know that the caps existed because the evidence was such as to enable a jury to conclude that the defendant had knowledge of the large accumulation of unidentified, unusual property on its land and that a reasonable person, knowing this, would infer that the unidentified, unusual property includes unidentified objects that involve an unreasonable risk of death or serious bodily injury to trespassing children of whom the defendant is aware, or would govern his conduct upon the assumption that such unidentified objects exist. Supplemental Opinion by Judge Fahey in *McGettigan v. National Bank of Washington,* 320 F.2d 703, 710 (D. D.C. 1963).

Because we have no way of telling whether the jury's verdict is predicated upon a finding that the defendant knew, had "reason to know," or "should have known" of the dynamite caps, we order a new trial.

## V.

Defendants also contend that the plaintiff is barred from recovery under the attractive nuisance doctrine because the plaintiff was aware of the danger of blasting caps and thus the fourth essential element of the

*Angelier* statement of the doctrine was not satisfied. Plaintiff asserts that he did not fully appreciate the danger and that therefore the fourth element is satisfied.

In *Nechodomu v. Lindstrom*, 273 Wis. 313, 325, 327, 78 N.W.2d 417 (1956), we upheld a jury instruction that a machine is dangerous to trespassing children if their judgment or experience prevented them from *"realizing that a condition observed by them is dangerous or, although they realize it is dangerous, may prevent them from appreciating the full extent of the risk. . . . [P]ossessors are not subject to liability to a child who, in fact discovers the condition and appreciates the full risk involved therein. . . ."* (Emphasis added.) The jury was therefore instructed that the trespassing child's appreciation of danger and realization of risk under the fourth element of the Wisconsin doctrine of attractive nuisance involves more than a mere awareness of danger or risk. This instruction in *Nechodomu* conforms to the view set forth in the comments to sec. 339, Restatement (Second) of *Torts* (1965). The comments state that the possessor is freed of liability if the risk is "fully realized" by the child, or if the child appreciates "the full extent of the risk," or the child has "as full a perception of the risks which they are running as though they were adults." *See* comment *i*, p. 202, comment *j*, p. 203, comment *k*, p. 204, comment *m*, p 204.

We agree with the court of appeals that the jury was entitled to believe plaintiff's testimony and to find that the plaintiff did not fully understand the danger involved. "If it is fairly debatable whether the child, considering his age and degree of immaturity, really comprehended the extent of the danger to which he was exposing himself, a jury question as to realization is presented." *Haase v. North Hudson Scrap Iron Corp.*, 62 N.J. 263, 300 A.2d 561, 562–3 (1973). *See also Latimer*

*v. City of Clovis,* 83 N.M. 610, 495 P.2d 788 (1972); *Johnson v. Clement F. Sculley Construction Company,* 255 Minn. 41, 95 N.W.2d 409 (1959). The jury determines the credibility of witnesses and weighs the evidence, and its findings will be upheld if there is any credible evidence to support them. *May v. Skelly Oil Company,* 83 Wis.2d 30, 264 N.W.2d 574 (1978). An appellate court "will view the evidence in the light most favorable to the verdict, and affirm if there is any credible evidence on which the jury could have based its decision, particularly where the verdict has the approval of the trial court." *Roach v. Keane,* 73 Wis.2d 524, 536, 243 N.W.2d 508, 515 (1976).

The facts in this case can be compared to those in *Nechodomu v. Lindstrom,* 273 Wis. 313, 78 N.W.2d 417 (1956), in which the court held that the jury was entitled to infer from the testimony that the injured child believed that he could perform the act without risk and that he thus did not appreciate the danger. In that case the minor was injured when he placed his hand into a machine. The minor testified that he knew there were paddles in the machine, that he knew the paddles were moving, and that he knew the machine had a motor which was running. He also testified that another child had reached into the machine first and had not been injured.

The facts in this case are distinguishable from those in *James v. Wisconsin Power & Light Co.,* 266 Wis. 290, 63 N.W.2d 116 (1954), and from those in *Fleury v. Wentorf,* 82 Wis.2d 105, 262 N.W.2d 68 (1978), upon which the defendant relies. In the *James* case the minor was injured by electrical shock after climbing a power pole. This court reversed the trial court's approval of a verdict in favor of the minor and dismissed the complaint, because the minor testified that he was aware of the danger of shock, but thought there was no danger unless

he actually touched the high wire. Since the minor was balancing within inches of the wire, he was necessarily aware that he was continuing to expose himself to a danger which had not dissipated and that he was hovering within the zone of danger. In the *Fleury* case, *supra,* 82 Wis.2d at 114, the minor "testified at trial that she was fully aware of the danger of looking into the cannon; that the tennis ball would be launched at great speed and that anyone who might be in the way could be injured." The trial court held that as a matter of law the minor's knowledge disqualified her from any application of the attractive nuisance doctrine, and this court upheld the trial court saying "it is apparent that the fourth element of attractive nuisance has not been established." In the case at bar, plaintiff testified that he did not appreciate the fact that he was still in a zone of danger ten or more minutes after the blasting caps were thrown into the fire. There is thus credible evidence to support the jury's implicit finding that the plaintiff did not appreciate the full extent of the risk inherent in the situation.

Our conclusion that the jury could find that the plaintiff did not realize the full extent of the risk does not foreclose the jury from finding that the plaintiff was negligent for purposes of comparative negligence. For a discussion of the relation between the fourth element of the attractive nuisance doctrine and comparative negligence, *see Nechodomu v. Lindstrom,* 273 Wis. 313, 327a–327b, 77 N.W.2d 707, 78 N.W.2d 417 (1956).

As is evident from our discussion, both parties and the trial court followed the literal words of the fourth element of the cause of action of attractive nuisance and examined the plaintiffs, the injured party's, realization of the risk. We believe that the parties and the trial court have concerned themselves with the wrong boy. We do not think that in the instant case the plain-

tiff's awareness is significant to a determination of the possessor's liability under the *Angelier* rule. We think the trespassing children's awareness is the significant factor.

In the traditional attractive nuisance case the injured party is the child trespasser and we look to the injured child's awareness of the danger to determine the possessor's liability to the trespassing child. In this case, however, the plaintiff was not the child trespasser. As we have previously noted, the doctrine of attractive nuisance is applied in the instant case on the theory that the possessor should be liable to the injured plaintiff because the possessor owes a duty to the child trespasser, the possessor has breached that duty, and the injury to the third party by the dangerous object removed from the premises by the child trespasser is within the foreseeable risk. *Cf. Palsgraf v. L.I.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Thus we must initially determine in the instant case whether the defendant owes a duty to the trespassing chidlren and has breached that duty. These issues are governed by looking to the awareness of the trespassing children. *See Johnson v. Clement F. Sculley Construction Co.*, 255 Minn. 41, 95 N.W.2d 409, 413–15 (1959). Consequently in this case the plaintiff's knowledge and awareness of the danger go to the issue of contributory negligence rather than to the fourth element of the doctrine of attractive nuisance.

We have throughout this opinion followed the practice this court has followed in its previous opinions of using the terminology of the *Angelier* rule and the five elements set forth by this court, *see* pp. 44–46, *supra*, and of interpreting the Wisconsin formulation of the attractive nuisance doctrine as if it were the same as sec. 339 of Restatement (Second) of Torts. This is a cumbersome, round-about way of dealing with the doc-

trine of attractive nuisance. Because this court has over the years viewed the *Angelier* formulation to be the equivalent of sec. 339 of the Restatements, to simplify the application of the attractive nuisance doctrine in the future, we now abandon the terminology of the *Angelier* rule (and of the five elements of the cause of action we have previously set forth) and hereby adopt sec. 339 of the Restatement (Second) of Torts (1965) as the correct statement of the doctrine.

For the reasons set forth,[20] we conclude the judgment must be reversed and the cause remanded for a new trial.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed; and the case is remanded to the circuit court for further proceedings consistent with this opinion.

COFFEY, J. (*dissenting in part*). I would agree that the trial court erred in its instruction to the jury. However, I would not return this case to the trial court for a new trial. I would hold that the evidence did not warrant recovery against the defendant, Homestake Enterprises, Inc., on the theory of attractive nuisance. I would also hold that public policy prohibits recovery by the plaintiff, because his damages were caused by his negligent use of stolen property, and it would be unreasonable to allow recovery against the defendant even if its negligence in some way contributed to the theft of the prop-

---

[20] We do not accept defendant's contention that sec. 29.68, Stats., applies. Nor do we accept defendant's contention that public policy considerations require that Homestake be relieved of any liability to the plaintiffs. *Stewart v. Wulf,* 85 Wis.2d 461, 271 N.W.2d 79 (1978), sets forth six factors to be considered in relieving a party of liability once causal negligence has been established, and recognizes that cases which demand relief on the basis of public policy are rare and present unusual or extreme considerations. We agree with the court of appeals that no unusual or extreme considerations have been presented here.

erty, and, therefore, to the injuries suffered by the plaintiff as the result of the negligent use of the blasting caps.

The attractive nuisance doctrine relies on the presence of an artificial condition which the possessor of land has maintained or allowed to exist thereon. The majority now expands this doctrine to include personal property not associated with the land or any activity conducted thereon. A possessor who "has reason to know" of the existence of the property apparently has a duty to secure it so that it cannot be removed without permission by a child trespasser even when committing a theft. The majority disclaims imposing a duty of inspection on the possessor, at the same time holding:

"If the possessor knows of facts from which a reasonable person would infer that the condition in question exists, or would govern his conduct upon the assumption that it does exist, the possessor is charged with knowledge of the condition." (*Supra*, at 53).

The majority says that the defendant could be held "to have reason to know" of the caps' existence on the property because of the large accumulation of junk on the land. According to the majority, this might give the defendant cause to know that items were present which posed a serious risk to trespassing children. I do not dispute this conclusion, but I do dispute that knowledge of unidentified junk will permit an inference that blasting caps were present. Although the majority disclaims imposing a duty to inspect on the defendant, the "reason to know" analysis imposes not only a duty to inspect, but also a duty to find the dynamite caps.

The majority uses several pages of its opinion to distinguish between "should know" and "reason to know." As applied to the facts of this case, the effort is wasted. Both terms, as used in the Restatement (2d) of Torts (1965), have alternative definitions charging the possessor with knowledge if a reasonable person would "gov-

ern his conduct upon the assumption that (the fact in question) exists." *Supra*, at 48. The inferences which the majority uses to satisfy this dual definition are so tenuous that the majority is placing a heavier burden on the landowner than a mere duty of inspection. If the presence of junk supports a reasonable inference that blasting caps are on the premises, the defendant was required to assume that fact even if an inspection had been made and no caps were discovered. Having disclaimed the duty to inspect, the majority is saying that the "assumption" governs every case. This amounts to imposing strict liability on the landowner if a reasonable person would have "assumed" there was a serious risk to children, for whatever reason. With the benefit of hindsight, this is an easy assumption to make.

The majority rejects the holding of the trial judge that the plaintiff was a trespasser. This is necessary so that the majority can order a new trial, because otherwise the plaintiff's age and knowledge of the danger would bar recovery under the attractive nuisance theory. The plaintiff was fifteen years old at the time of the incident. There is nothing in the record to demonstrate that he possessed less than ordinary intelligence. He had been *warned on numerous occasions of the dangers* associated with blasting caps, as had his companions. This is why all three ran after the caps had been thrown in. In *Shulte v. Willow River Power Co.*, 234 Wis. 188, 290 N.W. 629 (1940), a complaint grounded on a theory of attractive nuisance for the death of a sixteen-year-old boy was held subject to a demurrer because the attractive nuisance theory did not apply to young people of ordinary intelligence who are sixteen years of age, and there was no allegation that the boy was not of ordinary intelligence. In *James v. Wisconsin Power & Light Co.*, 266 Wis. 290, 63 N.W.2d 116 (1954), the plaintiff was a fifteen-year-old boy with a mental age two or three years

younger. He had been warned of the danger. A jury verdict returned in his favor on the attractive nuisance theory was reversed by this court.

The majority seeks to avoid the foregoing cases by holding that the plaintiff's eleven and fourteen-year-old companions, the actual trespassers, were protected under the attractive nuisance theory and, therefore, the plaintiff was covered as well because the defendant might have breached its duty to the eleven and fourteen-year-old boys. The undisputed evidence demonstrates that the younger boys were well aware of the danger posed in throwing blasting caps into a fire. Therefore, the attractive nuisance doctrine was not applicable to them, and the majority's curious reasoning that under the attractive nuisance doctrine their negligence can somehow be attributed to the defendant, cannot be applied to the facts in this case. Further, the majority brushes aside the fact that the caps were *stolen* from the defendant's land. The plaintiff was well aware that the caps were stolen property. In fact, he participated in the effort to destroy the evidence by burning the caps. The fifteen-year-old plaintiff, as well as the eleven and fourteen-year-old boys, each could have been found delinquent (guilty of the theft of the caps) under the reasoning employed in *State v. Genova*, 77 Wis.2d 141, 252 N.W.2d 380 (1977). As a party to the crime, the plaintiff could also have been considered as a party to the trespass.

Even if the defendant knew of the existence of the blasting caps, public policy prevents a holding that the defendant is liable for the plaintiff's injuries. In *Lichter v. Fritsch*, 77 Wis.2d 178, 252 N.W.2d 360 (1977), this court held that it was against public policy to impose liability on the owner of a motor vehicle, who had negligently left the key in the ignition, for damages sustained by a third party when the vehicle was stolen by another who negligently caused the injuries of the third party.

Applying the same reasoning, it is against public policy to allow recovery in this case. The blasting caps were stolen from the defendant's property and were negligently thrown into the fire by one of the boys who perpetrated the theft. They exploded causing the plaintiff's injury. I would hold that it is an unreasonable burden on the owner of land to allow recovery for injuries caused by the negligent use by a trespasser of personal property stolen from the premises of another.

The only possible distinction between *Lichter v. Fritsch, supra,* and the case at bar is that there was no insurance coverage in the *Lichter* case because the vehicle was operated without the owner's consent and there is coverage here. If a car is left unlocked in the owner's driveway, and is taken by another, there might not be coverage under the owner's auto insurance policy, but there may be coverage under the owner's homeowner's policy. It behooves a landowner to be sure that his premises liability policy provides coverage at least as high as his automobile liability policy. Perhaps the majority would even extend coverage if the car were "hotwired" by a juvenile. So long as attractive nuisance is being expanded beyond its intended limits to include movable, personal property which has no connection with the premises other than being present thereon, it can also be applied to a riding lawn mower or snowmobile taken by a juvenile causing injury to another off the owner's premises. The possibilities are endless.

For the foregoing reasons, I agree that the judgment of the trial court should be reversed. However, I would remand with directions to dismiss the complaint rather than order a new trial. Since the majority has ruled that there is need of a new trial and since the focus of the defendant's liability is to be on the attractive nuisance duty to the plaintiff's uninjured eleven and fourteen-year-old companions, I believe the defendant is also en-

titled to a comparative negligence instruction relating not only to the plaintiff's duty of ordinary care to protect himself, but also to his duty as the oldest in the group to warn his companions of the danger of throwing blasting caps into a fire and his duty to dissuade them therefrom. The negligence of all parties is to be compared, including the former tenant and the plaintiff's two companions as well as the plaintiff and the defendant, Homestake. If the record after retrial is the same as the one before us now, the trial court must hold that the plaintiff is more negligent than the defendant, Homestake, as a matter of law.

I am authorized to state that Mr. Justice WILLIAM G. CALLOW joins in this dissent.